UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal No. 08-CR-4229-JLS |
| Plaintiff, | ) |
| v. | ) **ORDER FOLLOWING HEARING ON** |
| | ) **PRETRIAL MOTIONS** |
| WESTERN TITANIUM, INC. (1), | ) |
| DANIEL SCHROEDER (2), | ) |
| BRIAN MISAK (3), | ) |
| JOHN COTNER (4), | ) |
| CHEEM ANG (5), | ) |
| MACH 2 METALS, INC. (6), | ) |
| INTEGRATED TITANIUM GROUP I (7), | ) |
| INTEGRATED TITANIUM GROUP II (8), | ) |
| Defendants. | ) |
| | ) |

On July 26 and 27, 2010, the Court held a hearing on pending pretrial motions.  Having fully considered the parties' submissions and the argument presented at the hearing, the Court rules as follows:

1.    **Defendants Western Titanium, Inc. ("Western") and Schroeder's Motion to Suppress Evidence (Doc. No. 438)**

The Court will hold an evidentiary hearing with respect any documents specifically identified by Defendants in their motion as falling outside the scope of the search warrant on **August 30, 2010 at 9:00 a.m.**  The Government shall identify, by August 20, 2010, which of those documents it intends to use at trial.  The remaining documents shall be returned to the Defendants.  Defendants' request to supplement their motion to specifically identify electronic documents falling outside the scope of the

1    warrant is denied.

2         The scope of the evidentiary hearing shall be limited to Defendants' claim that specified

3    documents seized by the agents fell outside the scope of the search warrant. For the following reasons,

4    the Court is not persuaded that agents engaged in an impermissible general search, or that the search

5    warrant was unconstitutionally overbroad.

6              a.    Impermissible General Search

7         Defendants contend that the Government engaged in a wholesale seizure of documents outside

8    the scope of the warrant, thus constituting an impermissible general search requiring suppression of all

9    documents seized. Based on the Declaration of Agent Dao, the Court does not believe that the agents

10   executing the warrant acted in "flagrant disregard" of the terms of the search warrant.

11        Agent Dao indicates that prior to the execution of the search warrant, he briefed the agents

12   participating in the search regarding the nature of the search and the specific categories of items that

13   were subject to seizure. Each agent read a copy of the affidavit and the search warrant, and was

14   provided with a copy of the Attachments "A" and "B." The search that day lasted approximately 12

15   hours, which suggests that agents were in fact reviewing documents for compliance with the search

16   warrant prior to their seizure, and were not engaged in the wholesale seizure of documents alleged by

17   Defendants.

18        Nor does the Court believe that the removal of the file cabinets from the premises by Agent Dao

19   demonstrates a flagrant disregard for the terms of the search warrant. Agents had already determined

20   that 65-75% of the documents within similar file cabinets fell within the scope of the search warrant

21   before the cabinets were removed. The off-site search of the cabinets consumed approximately 160

22   hours while agents reviewed the documents to determine whether they fell within the scope of the

23   warrant. Given that significant effort was expended in attempt to comply with the terms of the search

24   warrant, the Court does not find that the agents flagrantly disregarded the search warrant by ignoring its

25   terms or engaging in indiscriminate fishing expeditions. Accordingly, Defendants' request for

26   suppression of all of the documents seized pursuant to the search warrant is denied.

27             b.    Search Warrant Overbreadth

28        Defendants contend that the search warrant was constitutionally overbroad because it allowed for

2

08cr4229-JLS

the seizure of broad categories of documents without any showing that the business was permeated with fraud.  Having reviewed the search warrant and the affidavit, the Court finds that the warrant complies with the Fourth Amendment's specificity requirement.  That is, the warrant identifies the items to be seized with sufficient particularity to allow the executing officers to determine what they are authorized to search for and what is authorized to be seized.  The affidavit also sets forth probable cause to seize the particular things named in the warrant.   Therefore, Defendants' overbreadth challenge to the search warrant is denied.

>    **2.**    **Defendant Mach 2 Metals Rule 41 Motion to Return Property Unlawfully Seized on April 15, 2008 and Motion to Join Western Titanium and Daniel Schroeder Motion to Suppress Evidence (Doc. No. 440)**

Defendant Mach 2 Metals, Inc. ("Mach 2") moves for return of property pursuant to Rule 41 of the Federal Rules of Criminal Procedure and joins Defendants Western and Schroeder's Motion to Suppress Evidence on the basis that agents seized improperly seized Mach 2 documents during their search because the warrant was directed at Western Titanium.  The Government responds that at the time of the search, Mach 2 Metals was simply a fictitious business name that Western Titanium operated under and therefore, any Mach 2 documents were in fact Western Titanium documents.

Based upon the Government's exhibits, the Court is persuaded that Mach 2 *was* effectively Western Titanium and that Mach 2 documents therefore fell within the scope of the search warrant. Accordingly, Mach 2's motion for return of seized property and for suppression of evidence is **DENIED**.

>    **3.**    **Defendants Western and Schroeder's Motion to Dismiss the Indictment for Selective Prosecution (Doc. No. 437)**

The Court will deny this motion because Defendants have failed to establish that the prosecution has brought the charges in this case for reasons forbidden by the Constitution.   The presumption of regularity supports prosecutorial decisions and, in the absence of clear evidence to the contrary, courts must presume that the Attorney General and United States Attorneys have properly discharged their official duties.   *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

To demonstrate the existence of a prima facie case for selective prosecution, a defendant must present evidence that:  (1) others similarly situated were not prosecuted, and (2) the prosecution was based on an impermissible motive. *United States v. Alexander*, 287 F.3d 811, 817-18 (9th Cir. 2002).

1    In order to be entitled to discovery on the issue of selective prosecution, the defendant must produce

2    some evidence that similarly situated defendants of other races or other protected classes could have

3    been prosecuted but were not. *Armstrong*, 517 U.S. at 469.

4            Defendants have not made a showing sufficient to establish that they fall within a

5    constitutionally protected class distinct from those companies that allegedly were not prosecuted for

6    similar conduct or that this prosecution was based on an improper motive. The Court is not persuaded

7    that the fact that Defendants voiced objection to Boeing's problem advisories places them in a

8    constitutionally protected class. Moreover, Defendants' knowing participation in what the Government

9    contends was fraudulent conduct presents a legitimate, non-discriminatory basis for prosecution. *See*

10   *e.g., United States v. Taylor,* 693 F.2d 919, 923 (9th Cir. 1982) (noting that it is "quite rational for the

11   government, in deciding whether or not to prosecute, to consider whether the potential defendants have,

12   by their public statements or otherwise, made clear their actual or intended participation in the illegal

13   activity .").

14           Accordingly, Defendants' motion to dismiss the indictment for selective prosecution is

15   **DENIED**. Defendant's request for further discovery regarding this issue is also **DENIED.**

16           **4.      Defendants Western and Schroeder's Motion to Dismiss for Post-Indictment Delay**
17                   **(Doc. No. 443)**

18           Defendants Western and Schroeder move this Court to dismiss the Second Superseding

19   Indictment due to a Sixth Amendment speedy trial violation. The Court will deny this motion. In

20   making this determination, the Court has considered the length of the delay, the reason for the delay,

21   Defendants' assertion of their rights and any prejudice to Defendants. *See Doggett v. United States*, 505

22   U.S. 647, 651 (1992); *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The length of the delay is

23   presumptively prejudicial, as it will be nearly two years by the time the trial commences. *See Barker*,

24   407 U.S. at 530; *see also United States v. Murillo*, 288 F.3d 1126, 1132-33 (9th Cir. 2002).

25           The delay in this case is attributable to the resolution of Defendants' Rule 41 Motion. The Court

26   was willing to proceed with trial last October, provided Defendant's Rule 41 motion and all other

27   pretrial motions could be resolved before then. However, the Rule 41 motion has not been resolved and

28   remains pending until this day. Although Defendants have credited the Court for this delay, they fail to

account for their own conduct, such as appeals of the Court's initial ruling, their failure to comply with the Court's orders, and delays in the privilege hearing requested by defense counsel and incurred as a result of Defendants' unfounded attack on the integrity of the taint attorney.   Whatever the shortcomings of the Court, it has attempted to resolve the privilege issue as expeditiously as possible.   In any event, none of the delay in resolving the Rule 41 motion may properly be attributed to the Government.

The Court understands the defense position that it is delay caused by the return of the superseding indictments and its alleged failure to settle on a theory that have created the constitutional speedy trial violations and acknowledges that Defendants Western and Schroeder have consistently asserted their speedy trial rights.   However, the Government is not prohibited from continuing to investigate a case while an indictment is pending and, from a practical standpoint, Defendants could not have proceeded to trial any sooner had there been no superseding indictment – Defendants' Rule 41 motion still would not be resolved.   Therefore, the Court can find no prejudice to the Defendants warranting relief on speedy trial grounds.

Finally, although Defendants' claim appears to be based solely on Sixth Amendment grounds, the Court finds that there has been no violation of the Speedy Trial Act.   As detailed in the Government's response and opposition, only 25 non-excludable days have passed since the filing of the original indictment.   Therefore, Defendants' Motion to Dismiss for Post-Indictment Delay is **DENIED**.

**5. Defendants Western and Schroeder's Motion to Exclude Testimony and Evidence Regarding Tests Conducted by the Air Force Research Laboratory and Testimony Regarding the Requirements of Specification MIL-T-9046 (Doc. Nos. 445 and 466)**

Having considered the parties' papers and the argument of counsel, the Court will deny the defendants' *Daubert* motion.   The applicable legal standard is not in dispute.   Both sides appear to agree that Dr. Calcaterra is offering scientific, technical or other specialized knowledge, bringing his testimony within Federal Rule of Evidence 402.   As such, this Court must serve as a "gatekeeper" to exclude "junk science" by making a preliminary determination that Dr. Calcaterra's testimony is reliable.   This is a two-part analysis.   First, the Court must determine if Dr. Calcaterra's testimony rests on a reliable foundation, that is, does it amount to good science.   Second, this testimony must also be relevant to the task at hand.

Defendants' arguments all go to the question of relevance.  They do not argue that the Air Force Research Laboratory's testing methods are not generally accepted in the scientific community, that it has not been tested, or that it has a problematic rate of error.  Defendants in fact concede that they have no basis for such a challenge.  Thus, in light of the Government's briefing on this issue and Defendants' lack of substantive challenge, the Court finds that Dr. Calcaterra's testimony amounts to "good science."

The inquiry thus continues to whether that testimony is relevant to the case at hand.  To begin with, relevance is not about Dr. Calcaterra's conclusions or their correctness.  Rather, if his testimony logically advances a material aspect of the Government's case, Calcaterra may testify and the jury will decide how much weight to give that testimony.

Having reviewed Defendants' arguments, the Court finds that the proposed testimony is sufficiently relevant to permit the Government's expert testimony at trial.  The Government's testing goes to the question of whether the material sold by Western Titanium met the requirements of MIL-T-9046 and whether Defendants acted with the specific intent to defraud when they represented that it did.  Although the precise requirements of the specification are in dispute, Defendants' knowledge and intent are questions which must be resolved by the jury.  Moreover, the disagreement between Defendants' experts and the Government's experts does not make this testimony irrelevant or unreliable.

As to the questions of testing directionality and the various secondary properties, these issues also must be sorted out by the jury.  The Court is persuaded by the Government's arguments that these questions are not necessarily irrelevant and that their import for the case at hand is only properly determined by the finder of fact.

As to Dr. Calcaterra's additional opinions, the Court is unpersuaded that these opinions are unreliable simply because Defendants disagree with them.  Were that the relevant standard, Defendants experts on these issues would also be excluded as unreliable.  Ultimately, the Court finds that the additional opinions challenged by Defendants are both sufficiently reliable and relevant to be offered at trial.  Defendants are, of course, free to challenge these opinions, but the significance and weight they are given is up to the jury.  As the Ninth Circuit has held, shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.

Therefore, since the Court finds that Plaintiffs' expert testimony is both sufficiently reliable and

1 relevant, Defendants' *Daubert* motion is **DENIED**.

2
3       **6.**    **Defendants Western and Schroeder's Motion to Extend Time in Which to File Motions Challenging Expert Witnesses Testimony (Doc. No. 439)**

4       Defendants Western and Schroeder contend that the Government has not met its obligations

5 under Rule 16 to provide a written summary of any testimony the Government intends to use under

6 Evidence Rules 702, 703, or 705 and therefore request an extension of time to file motions challenging

7 expert witness testimony.   The Government responds that Defendants have been provided with

8 substantial information about the individuals named by the Government to be providing scientific and

9 technical expertise, however, the Government acknowledges that some future disclosures may be

10 forthcoming.

11       The Court finds that any challenge to a potential expert witness would be properly raised as a

12 motion in limine, therefore Defendant's motion to extend time, to the extent that it's not moot, is

13 **GRANTED**.  The motions in limine hearing in this case is set for October 6, 2010, with motions being

14 due on September 8, 2010, 4 weeks prior.   The Government shall make a good faith effort to provide all

15 expert witness disclosure at least two weeks prior to that date, by August 25, 2010.

16
17       **7.**    **Defendants Western and Schroeder's Supplemental Motion Dismiss Count 5 Based on Statute of Limitations (Doc. No. 436)**

18       Defendants Western and Schroeder contend that Count 5 of the Second Superseding Indictment

19 must be dismissed because the original charge has been broadened and cannot be deemed to relate back

20 to the original indictment.  Thus, Defendants contend that the new broadened charge falls outside the

21 applicable statute of limitations.

22       The Court finds that the charge in Count 5 of the Second Superseding Indictment charges the

23 same fraud alleged in Count 3 of the Superseding Indictment and Count 3 of the original indictment.

24 That is, that on April 14, 2004, the Defendants committed a violation of 18 U.S.C. Section 38(a) by way

25 of a Certificate of Compliance originally issued on September 9, 2002 falsely stating that the product

26 met the minimum requirements of specification of MIL-T-9046 and had been ultrasonically inspected

27 per PS21211 Cla AI and found acceptable.  The same misrepresentation alleged in Count 5 of the

28 Second Superseding Indictment was alleged in Count 3 of the original indictment, therefore the Court

08cr4229-JLS

1  finds that the return of the original indictment tolls the statute of limitations.

2      The authority cited by Defendants does not require a contrary conclusion.  In *United States v.*

3  *O'Neill*, 463 F.Supp 1205 (E.D. Pa. 1979), the second indictment charged a different misrepresentation

4  than that alleged in the first.  The first indictment charged that the defendant falsely represented to a

5  bank that insurance policies submitted as security for a loan were in full force and effect with a portion

6  of the premium paid.  The superseding indictment charged the defendant with falsely representing to the

7  bank that the insurance policies submitted as security had a future cash surrender value and that they had

8  been assigned to him.  These are entirely different representations.  However, in all iterations of the

9  indictments in this case, the misrepresentation alleged in Count 5 of the Second Superseding Indictment

10  has remained the same.   The Court agrees with the Government's position that the fact that Count 1

11  conspiracy charge has changed is irrelevant to the substantive charge alleged in Count 5, which has

12  remained substantially the same.  Accordingly, the Court finds that the statute of limitations with respect

13  to Count 5 was tolled at the filing of the first indictment.  Defendants' motion to dismiss Count 5 of the

14  Second Superseding Indictment is **DENIED.**

15
16      **8.    Defendant Western's Motion to Dismiss Based on Prosecutorial Misconduct (Doc. Nos. 442 and 441)**

17      The Court will deny the motion to dismiss the indictment for alleged prosecutorial misconduct

18  filed by Defendant Western and joined by Defendant Schroeder with additional authorities.  The Court

19  finds no evidence to support Defendants' legal claims of error, let alone any evidence that the

20  prosecution engaged in a pattern of "unethical, untruthful, and unrepentant conduct."

21       Defendants present no evidence to support their accusation that AUSA Sullivan disclosed

22  detailed information about the grand jury investigation.  Therefore, the Court accepts Ms. Sullivan's

23  declaration that she has never spoken publicly to any group regarding matters pending before the grand

24  jury and that she has never disclosed Rule 6(e) materials to any person not authorized to receive such

25  information.  The Court finds no Rule 6(e) violation.

26      Defendants have also failed to establish any *Brady* or *Giglio* violation.  In fact, Defendants have

27  not filed any motion for production of alleged *Brady* or *Giglio* material in this Court.  Thus, the Court

28  will not infer bad faith on the part of the prosecution when Defendants have not even demonstrated the

1  existence of any disclosure violation.

2      Nor is the Court persuaded that the Government has attempted to influence and intimidate

3  witnesses.  Defendants have not named any witness that has been allegedly influenced or intimidated by

4  the prosecution, nor have they provided the Court with any specific evidence to support their claims.

5      The Court further finds that the prosecution did not improperly use the grand jury to prepare for

6  trial.  As Defendants have noted in other motions pending before the Court, each superseding indictment

7  in this case has charged additional and different criminal conduct than that contained in the original

8  indictment.  Thus, the Court cannot conclude that the grand jury was being solely to prepare for trial on

9  the original charges.  The Court finds no evidence of prosecutorial misconduct stemming from the grand

10  jury proceedings.

11      Defendants' November 25, 2009 Motion to Quash Grand Jury Subpoenas and to Suppress Any

12  and All Evidence or Testimony Obtained as a Result Thereof Based Upon Abuse of the Grand Jury

13  (filed under seal) is **DENIED**.  The Court had been reserving ruling on that motion pending resolution

14  of the privilege issues, but having now considered the authorities presented in this round of briefing, the

15  Court concludes that even if privileged information was presented to the Grand Jury, such conduct

16  would not present a cognizable challenge to the grand jury proceedings.  The appropriate remedy would

17  be suppression of the evidence at trial.

18      Finally, the Court is not persuaded that the prosecution has engaged in a pattern of dishonesty or

19  that the circumstances surrounding Defendant Schroeder's arrest, incarceration, or bail conditions

20  present any basis to support a finding of prosecutorial misconduct.  Accordingly, Defendants' motion to

21  dismiss for prosecutorial misconduct is **DENIED.**  Defendants' request to leave this motion open

22  pending resolution of the attorney-client privilege issues is **DENIED**.

23      **9. Motions for Severance (Doc Nos. 459, 430, and 487)**

24      Defendants Schroeder, Ang, and Cotner have each filed motions to sever.  The Court will deny

25  all three requests.

26          a.    <u>Defendant Schroeder</u>

27      Defendant Schroeder maintains that severance of his trial is necessary because the disparity in

28  evidence between him and others is so overwhelming.  Defendant contends that since there is so little

1    evidence against him, he will be prejudiced at a joint trial by a potential "spill over" or "rub off" effect.

2    Even assuming that the Government possesses very little evidence against Defendant Schroeder, the

3    Court is not persuaded that the jury will not be able to properly compartmentalize the evidence against

4    him.  There is nothing particularly complex or inflammatory about the charges in this case which would

5    prevent the ordinary juror from being able to properly assess the evidence.  The Court will instruct the

6    jury that they must evaluate the evidence against each defendant separately and will provide requested

7    limiting instructions when specific evidence is admissible against only some defendants.  Furthermore,

8    the Court does not find the danger of "spill over" or "rub off" to be particularly compelling given that

9    Defendant Schroeder is charged in the conspiracy count and much of the co-conspirator evidence would

10   be admissible against him in a separate trial.  Therefore, Defendant's motion to sever on the basis of

11   prejudicial spill-over effect is **DENIED**.

12         Defendant Schroeder also maintains that severance is necessary because he may need new

13   counsel if certain documents are determined not to be privileged.  This motion is too speculative to be

14   ruled on at this time, and is therefore **DENIED**.  However, Defendant is granted leave to renew this

15   aspect of his motion should actual circumstances requiring severance arise.

16                     b.     Defendant Ang

17         Defendant Ang moves to sever on the basis that he will be unable to cross-examine Defendant

18   Schroeder should Schroeder documents (which Ang has never reviewed) be determined not to be

19   privileged and admitted against Ang at trial.  This motion is also too speculative to be determined at this

20   time and is thus **DENIED**.  Defendant Ang is granted leave to resubmit his motion should specific facts

21   demonstrating an actual possibility of prejudice develop.

22                     c.     Defendant Cotner

23         Defendant Cotner moves for severance on the grounds that he will be prejudiced by the

24   admission of evidence unrelated to him because he left the company in 2004.  Because the indictment

25   alleges acts continuing up to November 2009, Defendant maintains that it will be impossible for the jury

26   to assess Mr. Cotner's guilt or innocence on the basis of evidence relevant only to his case.  The Court is

27   not persuaded that the ordinary juror will not be able to understand when Defendant Cotner left Western

28   Titanium and that it will not be able to properly compartmentalize the evidence as it relates to him.  As

1    indicated previously, the Court will be careful to instruct the jury regarding its obligation to consider the

2    evidence against each defendant individually and does not believe that the charges or evidence in this

3    case are so complex or otherwise extraordinary that the jury will be unable to do so.  Accordingly,

4    Defendant's motion for severance on the basis of an alleged prejudicial disparity of evidence is

5    **DENIED**.  Defendant's request to renew this motion in light of a specific showing of prejudice

6    stemming from the admission of evidence subsequent to Defendant Cotner's withdrawal from the

7    conspiracy is granted.

8         Defendant Cotner also moves for severance on the basis of the potential admission of Schroeder

9    documents that may potentially be determined not to be privileged.  As stated with respect to Defendant

10   Ang's motion in this regard, this motion is **DENIED** as too speculative, but may be renewed upon an

11   actual showing of prejudice.

12

13        **10.    Defendant Schroeder's Motion to Extend Time to File Motion to Suppress Personal Property Seized Without a Warrant (Doc. No. 469)**

14        The Court rejected Defendant Schroeder's Motion to Suppress Personal Property Seized

15   Without a Warrant when it was submitted because Defendant sought to file the motion ex parte.  While

16   the Court is not entirely persuaded that Defendant could not have framed the motion in some fashion

17   that would have allowed the Government to respond, the Court did not intend to deprive Defendant

18   Schroeder of the opportunity to litigate a claim.  Therefore, Defendant's motion to extend time for filing

19   a motion to suppress personal property is **GRANTED**.  Defendant shall file any such motion within 10

20   days of the Court's final ruling on the privilege issues.  Given that this motion must be resolved within a

21   short time frame before trial begins, the motion be as brief and concise as possible; matters previously

22   asserted need not be addressed unless directly relevant to the issues at hand.

23        **11.    Defendant Misak's Motion to Dismiss the Indictment (Doc. No. 463)**

24        Defendant Misak moves for dismissal of the indictment pursuant to Federal Rule of Criminal

25   Procedure 12(b)(2).  Defendant contends that he is entitled to dismissal because the Court can find as a

26   matter of law that the defendants' interpretation of the specifications at issue in this case was reasonable.

27   Defendant Misak provides a comprehensive analysis of the charges in this case, and presents evidence

28   which would appear to contradict aspects of the Government's theory in this case, or at least the

1   Government's theory as represented by Defendant.

2          This Court, however, has no authority to dismiss an indictment on the allegation that the

3   Government will not be able to establish an element of the charged offenses.  *United States v. Nukida*, 8

4   F.3d 665, 669 (9th Cir. 1993) ("a Rule 12(b) motion to dismiss is not the proper way to raise a factual

5   defense.").  Here, Defendant Misak is asking the Court to determine that he that he lacked the requisite

6   intent to commit the crimes charged because his interpretation of the requirements of the specifications

7   was reasonable.

8          Although the Court may make preliminary findings of fact necessary to decide legal questions

9   presented by a Rule 12(b) motion, the Court may not invade the province of the ultimate finder of fact.

10  Thus, if a pretrial claim is substantially founded upon and intertwined with evidence concerning the

11  alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred.

12  *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), cert. denied, 478 U.S. 1007

13  (1986).  A motion to dismiss the indictment cannot be used as a device for a summary trial of the

14  evidence and this Court may not consider evidence not appearing on the face of the indictment.  *United*

15  *States v. Boren,* 278 F.3d 911 (9th Cir. 2002).

16         Therefore, Defendant's motion to dismiss the indictment must be denied as a premature

17  challenge to the sufficiency of the Government's evidence.  The appropriate way for Defendant to raise

18  this challenge is a motion for acquittal under Rule 29, presented at the close of the Government's case-

19  in-chief.  *Nukida*, 8 F.3d at 672-73.  Defendant's Motion to Dismiss the Indictment is **DENIED.**

20  Defendant's oral request to modify the motion with respect to the handbook and strike that portion of

21  the indictment is also **DENIED.**

22         **12.     Motions for Bill of Particulars (Doc. Nos. 491, 446, and 477)**

23         Defendant Ang has filed a Motion for a Supplemental Bill of Particulars requesting further

24  information regarding the charges contained in the Second Superseding Indictment.  Defendants

25  Western Titanium, Schroeder, and Mach 2 Metals have joined Ang's request, but also request additional

26  supplemental particulars regarding their participation in the charged offenses.

27         The Court has reviewed the Second Superseding Indictment and finds that, particularly in light

28  of the bill of particulars already filed by the Government, no further particulars are warranted.   A bill of

1    particulars is appropriate when the indictment is insufficient to permit the preparation of an adequate

2    defense; it is not intended to be used as a discovery tool or to require complete disclosure of every

3    aspect of the Government's case.   *Cooper v. United States*, 282 F.2d. 527, 532 (9th Cir. 1960).

4          The Court finds that the indictment in this case combined with the particulars already provided

5    by the Government apprise Defendants of the charges against them with sufficient particularity to allow

6    preparation of an adequate defense, avoid surprise at trial and protect against double jeopardy.

7    Furthermore, the Government has provided full discovery in this case, thus further obviating the need

8    for a bill of particulars.   *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979).

9          Therefore, Defendants' Motions for a Supplemental Bill of Particulars are **DENIED**.

10

11          **13.    Defendant Ang's Motion to Dismiss Counts 2 through 6 of the Second Superseding Indictment for Duplicity (Doc. No. 429)**

12         Defendant Ang moves the Court to dismiss counts 2 through 6 of the second superseding

13   indictment for duplicity.   The Court denies this motion.   The Court finds that 18 U.S.C. § 38(a)(1) does

14   not set forth three distinct crimes but rather alternative means of committing one crime and therefore is

15   not duplicative.   *See United States v. UCO Oil. Co.*, 546 F.2d 833, 838 (9th Cir. 1976).   Ninth Circuit

16   case law clearly establishes that when such a crime is denounced disjunctively in the statute, the

17   government may plead the crime conjunctively in the indictment in a single count, as the Government

18   did here.   *See United States v. Renteria*, 557 F.3d 1003, 1007 (9th Cir. 2009); *United States v. Urrutia*,

19   897 F.2d 430, 432 (9th Cir. 1990).   To be sure, the use of semi-colons and separate subsections setting

20   forth these alternative means may suggest that Congress intended them to be three distinct crimes.   *See*

21   *Jones v. United States*, 526 U.S. 227, 252 (1999). However, other factors such as the nature of the

22   conduct proscribed and the appropriateness of multiple punishment weigh against such a finding.   *See*

23   *United States v. Arreola*, 467 F.3d 1153, 1157 (9th Cir. 2006); *see also UCO Oil*, 546 F.3d at 837-38.

24   The Court therefore finds that Counts 2 through 6 are not duplicative; Defendant's motion is **DENIED**.

25

26          **14.    Defendant Ang's Motion to Suppress Evidence Seized Pursuant to Search Warrant (Doc. No. 473)**

27         Defendant Ang has filed a motion to suppress the evidence seized following execution of the

28   search warrant at the Western Titanium business premises.   Because Defendants Western and Schroeder

join in the motion, and because Defendant Ang likely possessed a reasonable expectation of privacy in his own office and personal property within the premises, the Court finds that the Defendants have established standing to challenge the search.

Defendant Ang contends that the affidavit in search of the search warrant contained material false statements or omissions and requests an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant asserts two claims of falsehood or omission: 1) the affidavit did not state that military specification MIL-T-9046 had been cancelled by the Department of Defense; and 2) the affidavit cited the grand jury testimony of Boeing representative Keith Meyer without providing other independent evidence which would have impeached Meyer's testimony.

The Court will deny Defendant's motion because there has not been a substantial preliminary showing of any material false statement or omission. The fact that the MIL-T-9046 specification had been cancelled does not mean that the specification was not still being used, nor does it alter the allegation that Western certified that it's titanium met the 9046 specification when in fact it did not.

The evidence regarding Mr. Meyer's opinions that forged bar and rolled plate titanium bear similar properties does not demonstrate that the Meyer statement set forth in the affidavit was false. In the affidavit, Agent Dao represented that Meyer testified before the grand jury that he instructed Western that certifying forged bar titanium as 9046 was an unacceptable practice and in violation of MIL-T-9046. Meyers' opinions about the similarities between plate and forged bar do not contradict the testimony about what he told Western. Nor does the Court believe that the failure to include the opinions of Meyer in the affidavit constitutes a material omission. The fact that the materials may contain similar properties does not contradict the allegation that the certification of forged bar titanium to 9046 is improper. Indeed, even in the allegedly exculpatory testimony cited by Defendant Ang, Mr. Meyer appears to acknowledge that the military does not consider forged bar titanium sufficient to comply with military specification 9046.

For these reasons, the Court finds that Defendant has not demonstrated a deliberate falsehood or reckless disregard for the truth sufficient to warrant a *Franks* hearing. Further, for the reasons stated, the Court does not believe that the cancellation of military specification 9046 demonstrates a lack of probable cause. Accordingly, Defendant Ang's motion to suppress evidence and request for a *Franks*

1    hearing is **DENIED**.

2        **15.**     **Government's Motion for Handwriting Exemplars (Doc. Nos. 411, 431-2)**

3        The Government has filed motions seeking handwriting exemplars from Defendants Schroeder,

4    Ang, and Misak.  The Government indicates that none of the documents it seeks to compare are included

5    in the ongoing attorney-client privilege litigation.  Accordingly, pursuant to *Gilbert v. California*, 388

6    U.S. 263 (1967), the Government's motions for handwriting exemplars are **GRANTED**.

7
         **16.**     **Government's Motion for Reciprocal Discovery and Expert Witness Disclosures**
8                      **(Doc. No. 431-1)**

9        The Court finds the Government to be in substantial compliance with its discovery obligations

10   under Rule 16 and that Defendants' reciprocal discovery obligations are therefore triggered.

11   Accordingly, the Government's Motion for Reciprocal Discovery is **GRANTED**.  Defendants shall

12   make a good faith effort to provide reciprocal discovery and expert witness disclosures by **September**

13   **24, 2010**.

14       **17.**     **Government's Motion for Production of Original Document (Doc. No. 431-3)**

15       The Court is not persuaded it has the authority to require Defendants to produce the requested

16   document at this stage in the proceedings.  The document was originally subpoenaed by the Grand Jury

17   and the Government accepted a copy as an accommodation to the business needs of Defendants.  While

18   the authority cited by the Government clearly establishes that the grand jury could have subpoenaed the

19   original document to investigate the whited-out portions, the Government has not provided any authority

20   indicating that the Court now has the authority to compel the Defendants to produce a document for

21   purposes of furthering the Government's investigation.  Therefore, the Government's motion to compel

22   production of the original document is **DENIED**.

23
         **18.**     **Government Motion for Finding Privilege Waiver for Electronic Evidence (Doc. No.**
24                     **431-4)**

25       The Government seeks a finding that Defendants have waived any attorney-client privilege with

26   respect to the electronic files seized in this case by virtue of their failure to file a privilege log

27   identifying documents claimed to be privilege.  The Court will deny this motion.

28       Although the Court ordered the defendants to submit a complete privilege log with respect to

1   each document, including electronic documents, claimed to be wrongfully seized, the Court finds that a

2   blanket finding of waiver may be unduly severe given the apparent state of confusion over the Court's

3   prior order and the Defendants' discovery motion regarding the files segregated for review by the taint

4   team.

5        As the Court understands it, there were approximately 81,500 electronic files copied from

6   Defendants' computers pursuant to the search warrant and approximately 600 of those files have been

7   segregated in the taint review process and have not yet been disclosed to the prosecution team.    While

8   the Court understands and agrees with the Government's position that Defendants should be capable of

9   identifying any privileged files because they still maintain possession of the computers, the Court

10   believes the more prudent course of action would be to allow Defendants an opportunity to challenge the

11   taint attorney's findings before it entertains any claim of waiver.

12        The Government relies upon *United States v. SDI Future Health, Inc.*, 464 F.Supp.2d 1027, 1044

13   (D.Nev.2006), in support of its position that Defendants have waived any privilege claim with respect to

14   the electronic files.  The court in that case did find that the defendants waived their attorney-client

15   privilege with respect to computer based records as to which the defendants never asserted specific

16   attorney-client privileges.  The court found that the fact that hundreds of thousands of documents were

17   seized did not relieve defendants of their obligation to identify privileged materials.  The *SDI* court also

18   relied upon the fact that the defendants were given full access to the seized records in holding that it was

19   unreasonable for SDI to fail to take steps to identify and assert its privilege.  Clearly, in these respects,

20   the *SDI* case supports the Government's position regarding waiver.

21        The Court is troubled, however, by observations made by the *SDI* court regarding the taint

22   procedure utilized in that case.  The court criticized the process because the Government did not provide

23   or implement any procedure for notifying SDI of the taint attorney's privilege decisions or afford SDI an

24   opportunity to challenge those determinations in court before the documents were provided to the

25   prosecution team.  However, the *SDI* defendants waited three years after the search to challenge the taint

26   procedure and by then it was too late.

27        In this case, however, the files reviewed by the taint attorney have not been turned over to the

28   prosecution team.  The taint attorney is still in possession of 600 files identified as potentially privileged

08cr4229-JLS

1   pursuant to a computer forensics examination for terms provided, at least to some extent, by defense

2   counsel.  While the Defendants may have fallen short of their obligation to identify specific documents

3   subject to the attorney-client privilege, the Court has trouble ignoring the fact that the Government has

4   itself identified an infinitely smaller universe of documents that are potentially privileged.  Considering

5   that the ultimate goal is to prevent the inadvertent disclosure of privileged documents to the prosecution

6   team, the Court has difficulty perceiving the harm – other than more delay – in allowing Defendants an

7   opportunity to challenge the taint attorney's determination regarding the electronic files.

8            Therefore, the Government shall, by July 29, 2010, disclose to Defendant Western, the 600 files

9   identified as potentially privileged.  Defendant shall, by August 10, 2010, provide a detailed privilege

10  log to the taint attorney in support of any privilege claims.  The taint attorney shall, by August 17, 2010,

11  make a final determination with respect to Defendant's claims of privilege.  Defendant  shall have until

12  August 24, 2010, to file a motion, under seal with notice to the taint attorney, for a Court determination

13  of any claims that remain in dispute.  Defendant shall endeavor to include, with its motion, all

14  information necessary to the Court's resolution of its claims so that the Court can rule on the papers, if

15  appropriate.  The taint attorney shall file any response to Defendant's motion on or before August 31,

16  2010.  The matter will then be deemed submitted and the parties shall await further order of the Court.

17           Defendant Western and Schroeder's supplemental claims regarding the seizure of the electronic

18  files are denied; the Court finds that the agents acted in good faith reliance on a facially valid warrant.

19  Defendants fail to specifically identify any documents outside the scope of the search warrant stemming

20  from the allegedly improper use of search terms by Agent Dao, therefore the Court does not consider

21  these electronic files to be a subject of the continued evidentiary hearing regarding documents allegedly

22  seized outside the scope of the warrant.

23
24       **19.    Government Motion for Inquiry Into Potential Conflict of Interest of Nancy Luque
             (Doc. No. 431-5).**

25           The Court will deny the Government's motion for inquiry into a potential conflict of interest of

26  Nancy Luque.  Given their alignment of interests, the Court has difficulty perceiving any potential

27  conflict of interest flowing from the fact that Ms. Luque is the employer of Jenna Aviano, a fact witness

28  for the United States.  Furthermore, Mr. Finley has submitted a declaration indicating that he has

1   explained what would be involved in a cross-examination of Ms. Aviano and that both Western

2   Titanium and Mr. Schroeder have consented to any conflict of interest that may be presented by these

3   circumstances.   Given this representation, the Court is not persuaded that there is anything to be gained

4   by a Court inquiry into any potential conflict of interest, particularly since Defendant Schroeder is

5   extremely knowledgeable in these proceedings and has a far better grasp of the details and potential

6   evidence in this case than does the Court.  Therefore, the Court will accept Defendants Western and

7   Schroeder's waiver of any potential conflict of interest presented by the circumstances raised by the

8   Government; the Government's motion is **DENIED**.

9
10          **20.    Government Motion for Inquiry Into Potential Conflict of Interest of Lisa
                     Schroeder (Doc. No. 431-6).**

11          In response to the Government's motion for an inquiry into the potential conflict of interest of

12   Lisa Schroeder, Lisa Schroeder has filed an opposition on behalf Integrated Titanium Groups ("ITG") I

13   and II criticizing the Government for "presupposing" that she will be representing ITG I and II.  There is

14   nothing presupposed about this fact, Ms. Schroeder has entered a notice of appearance as counsel for

15   these defendants in this matter.

16          As to Ms. Schroeder's suggestion that any jurisdictional claim has properly been raised by

17   statements allegedly made by her to the magistrate judge at the time of arraignment, the Court disagrees.

18   In any event, the Court finds jurisdiction and venue to be proper in this Court.  The Second Superseding

19   Indictment alleges a conspiracy to violate the criminal laws of the United States involving ITG I and II

20   "within the Southern District of California and elsewhere" and alleges overt acts committed within

21   Southern District of California.  A federal district court has jurisdiction to try a conspiracy to violate the

22   criminal laws of the Untied States in which one conspirator commits an overt act in furtherance of that

23   conspiracy within the United States.  Venue in a criminal conspiracy case may be laid in the place where

24   the conspiratorial agreement was entered into or where a furthering overt act was done.

25          Turning to the conflict issues presented in the Government's motion, the Court is concerned that

26   both Mrs. Schroeder's employment as general counsel for Western Titanium during time periods

27   relevant to this prosecution as well as her marriage to Defendant Schroeder create at least potential

28   sources of conflict of interest.  Mrs. Schroeder's interests in protecting her business and husband may be

08cr4229-JLS

divergent from the interests of ITG I and II.

Defendants ITG I and II correctly argue that the Government has not demonstrated the existence of any actual conflict of interest. However, once alerted to even a potential conflict of interest, the Court has an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment. Thus, the Court would like some type of assurance that: 1) ITG I and II are aware of Mrs. Schroeder's ties to Western Titanium; 2) understand the implications and potential risks involved in being represented by an attorney who may have vested interests in the outcome of their codefendants' cases; and 3) that ITG I and II waive any conflict of interest in this regard. The Court is willing to accept a corporation resolution or declaration to this effect, and again, is not persuaded that much further could be gained by a Court inquiry, particularly since ITG I and II appear to controlled solely by Mrs. Schroeder, who was present in Court while the Court voiced its concerns. Accordingly, the Government's motion is **DENIED IN PART AND GRANTED IN PART.**

**IT IS SO ORDERED**.

DATED: August 6, 2010

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge