1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>    vs.<br><br>WESTERN TITANIUM, INC. (1),<br>DANIEL SCHROEDER (2),<br>BRIAN MISAK (3),<br>JOHN COTNER (4),<br>CHEEM ANG (5),<br>MACH 2 METALS, INC. (6),<br>INTEGRATED TITANIUM GROUP I (7),<br>INTEGRATED TITANIUM GROUP II (8),<br><br>                        Defendants. | Criminal No. 08-CR-4229-JLS<br><br>**ORDER FOLLOWING HEARING ON MOTION TO SUPPRESS EVIDENCE** |

On August 30 and 31, 2010, the Court held a hearing on Defendants Western Titanium, Inc. (Western) and Schroeder's motion to suppress evidence seized outside the scope of the search warrant. (Doc. Nos. 438, 561, 565.)  Having fully considered the parties' submissions and the evidence and argument presented at the hearing, the Court rules as follows:

**1.	Defendants' Request to Hold the Suppression Hearing Open**

At the request of all defense counsel present, the Court held the August 30 and 31, 2010 suppression hearing open pending a determination of whether the Government fully complied with the Jencks Act with respect to Agent Mark Dao's testimony at the suppression hearing. *See* 18 U.S.C. § 3500 (2010); Fed. R. Crim. P. 26.2.  Having reviewed *in camera* the complete transcripts of Agent

1    Dao's grand jury testimony, the Court finds that the excised portions do not relate to the subject matter

2    of Agent Dao's direct examination testimony at the suppression hearing, namely, whether and why

3    the subject documents fell within or without of the search warrant's scope.  *See* Fed. R. Crim. P.

4    26.2(c).  Accordingly, the Government having met its Jencks Act obligations, the Court deems the

5    suppression hearing closed.

6          **2.     Defendants Western and Schroeder's Motion to Suppress Evidence (Doc.**

7                   **No. 438)**

8          The Court previously held that the Government did not engage in an impermissible general

9    search requiring suppression of all documents seized under the April 15, 2008 search warrant.  (*See*

10   Doc. No. 537, at 2.)  Accordingly, the narrow issue before the Court is whether specified documents

11   seized by the agents fell outside the scope of the warrant and must be suppressed.  *See United States*

12   *v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985).

13         It is axiomatic that search warrants must "particularly describ[e] the . . . things to be seized."

14   U.S. Const. amend. IV.  Agents conducting a search pursuant to a warrant may seize only those items

15   specifically enumerated in the warrant.  *See United States v. Tamura* , 694 F.2d 591, 595 (9th Cir.

16   1982); *see also Bivens v. Six Unknown Agents*, 403 U.S. 388, 395 n.7 (1999).  "In identifying the

17   property to be seized, the agents are 'required to interpret the warrant,' but are 'not obliged to interpret

18   it narrowly.'" *United States v. Hill*, 19 F.3d 984, 987 (5th Cir. 1994) (quoting *United States v. Stiver*,

19   9 F.3d 298, 302–03 (3d Cir. 1993)); *see also United States v. Marques*, 600 F.2d 742, 751 (9th Cir.

20   1979 ("[W]hile it is true that as a general rule, items seized pursuant to a warrant must be specifically

21   mentioned in the warrant, it makes no sense to interpret the terms of a warrant in a hypertechnical

22   manner when the interpretation of the [affidavit] upon which that warrant is based may be non-

23   technical and common-sense.") (citation omitted).  "[T]he question whether the evidence seized falls

24   within the scope of the warrant ultimately turns on the substance of the item to be seized 'and not the

25   label assigned to it by the defendant.'" *Hill*, 19 F.3d at 988 (quoting *United States v. Word*, 806 F.2d

26   658, 661 (6th Cir. 1986)).  An item to be seized comes within the scope of the warrant if it is the

27   "functional equivalent" of an item specifically listed in the warrant.  *Hill*, 19 F.3d at 987–88.

28         With these principles in mind, the Court turns to the documents identified at the suppression

1  hearing.

2      Defs.' Ex. 6, at 79 (Grand Jury (GJ) Ex. 55); *id.* at 115 (GJ Ex. 394); *id.* at 116 (GJ Ex. 395):

3  These documents contain the notation "Customer Supplied Sample(s)," indicating that Western

4  supplied pre-cut samples of titanium material to Atlas Testing Laboratories, Inc. for testing.

5  Accordingly, these documents come within Item 7[1] of Attachment "B" to the search warrant

6  (Attachment B), which authorizes the seizure of "[a]ll records which identify procedures used by

7  [Western] to cut test blocks or specimens to be sent to the laboratory for . . . testing."  Defendants'

8  motion is **DENIED** as to these documents.

9      Defs.' Ex. 6, at 80–97 (GJ Ex. 56): These documents contain the notation "+ 1 TP," indicating

10  that Western supplied pre-cut test pieces of titanium material to Aerocraft Heat Treating Co.

11  (Aerocraft) for heat treating.  (*See* Suppression Hr'g Tr. 131, Aug. 30–31, 2010.)  Accordingly, these

12  documents come within Item 7 because they identify procedures Western used to cut test blocks or

13  specimens.  Defendants' motion is **DENIED** as to these documents.

14      Defs.' Ex. 6, at 98–108 (GJ Ex. 57): This document is a copy of Aerospace Material

15  Specification 4965G.  Contrary to the Government's assertion, this document does not bear any

16  relation to procedures Western used to cut test blocks or specimens.  Rather, it only identifies the

17  procedures that a manufacturer must use to comply with AMS 4965G.  Accordingly, this document

18  does not come within Item 7.  Defendants' motion is **GRANTED** as to this document.

19      Defs.' Ex. 6, at 109 (GJ Ex. 81): This document is a copy of a certification from Press Forge

20  Co. and lists Western as the customer.  The document identifies the subject material as "6-4."  The

21  Government contends that the document "is an inventory record sheet that comes with Items 5 and

22  6 which permits (sic) seizure of records containing reference to Western's inventory of Ti 6AL-

23  4V . . . ."  (Consolidated Opp'n 16.)

24      Item 5 authorizes the seizure of "[a]ll inventory record sheets for all titanium Ti-6-AL-4V and

25  Ti-6AL-6V-2SN," and Item 6 authorizes the seizure of "[a]ll Receiving & Inspection Reports

26  regarding Ti-6AL-4V and Ti-6AL-6V-2SN."  However, the Government would have the Court read

27  Items 5 and 6 collectively to mean, "Any and all records relating to Western's inventory of Ti-6AL-

28

---

[1] Unless otherwise indicated, all "Item" notations refer to Items of Attachment B.

1    4V and Ti-6AL-6V-2SN." The Court's interpretation of the Government's argument is confirmed by

2    a review of the Government's briefing, which identifies virtually every disputed document as coming

3    within Items 5 and 6, in addition to at least one other listed Item. (*See generally* Consolidated Opp'n

4    13–17; Gov't's Supplemental Br.2–4.)

5            The Court declines to read Items 5 and 6 so broadly. The Government's proposed construction

6    of Items 5 and 6 would render many of the thirteen other Items listed in Attachment B mere surplusage

7    because virtually all of Western's records relate to its inventory of Ti-6AL-4V and Ti-6AL-6V-2SN

8    in some conceivable way.[2] Although the Court is cognizant of the principle that it should not read

9    Attachment B in a "hypertechnical" manner, *Marques*, 600 F.2d at 751, the Court is nevertheless wary

10   of reading Attachment B in a manner that would render certain of its components unnecessary. If the

11   Government wanted Item 5 to authorize the seizure of "all documents relating to Western's inventory

12   of Ti-6AL-4V and Ti-6AL-6V-2SN," it should have said so in Attachment B. Instead, it chose the

13   more specific language, "[a]ll inventory record sheets" and "[a]ll Receiving & Inspection

14   Reports . . . ." Accordingly, the Court rejects the Government's proposed construction of Items 5 and

15   6.

16           Because the Press Forge certification does not come within a reasonable construction of Items

17   5 and 6, Defendants' motion is **GRANTED** as to this document.

18           <u>Defs.' Ex. 6, at 110 (GJ Ex. 144); *id.* at 111 (GJ Ex. 157):</u> These Western certificates of

19   analysis indicate that the subject pieces of Ti-6AL-4V test material were cut from larger slabs of

20   intermediate titanium product. Accordingly, these documents come within Item 7 because they

21   identify procedures Western used to cut test blocks or specimens. Additionally, it is apparent from

22   the sizes of the intermediate and final material that these documents come within Item 14, which

23   _____

24           [2] For example, Item 1's reference to "[a]ll records regarding . . . Purchase Orders, Order Entry
     Forms and Invoices relating to titanium certified to Mil-T-9046[] [and] AMS-T-9046" would be
25   unnecessary because all records of purchases and sales of titanium certified to Mil-T-9046 and AMS-
     T-9046 would reflect addition to or depletion of Western's inventory of Ti-6AL-4V and Ti-6AL-6V-
26   2SN. Item 8's reference to "[a]ll records regarding . . . the sale of titanium" to the listed vendors, and
     Item 2's reference to records "regarding the sale of titanium under the specification Mil-T9047" would
27   similarly relate to Western's inventory of Ti-6AL-4V and Ti-6AL-6V-2SN. The Government's
     briefing also suggests that Item 5 renders unnecessary Items 7 and 14, which relate to Western's
28   procedures for cutting test blocks and cutting on the thickness or short transverse of titanium material,
     respectively. (*See* Gov't's Supplemental Br. 2:25–28, 4:13–16.)

1    authorizes the seizure of "[a]ll records regarding [Western's] procedures relating to cutting the

2    thickness or short transverse of titanium material and or forged bar."  Therefore, Defendants' motion

3    is **DENIED** as to these documents.

4         Defs. Ex. 6, at 112 (GJ Ex. 223): This document is a quotation from Pittsburgh Flatroll Co.

5    The Government contends that this document comes within Items 5 and 6.  (Consolidated Opp'n 16.)

6    For the reasons stated above, the Court disagrees.  Accordingly, Defendants' motion is **GRANTED**

7    as to this document.

8         Defs.' Ex. 7 (WT-SW-BOX01-01351 to -01354): This document is a Precision Aircraft

9    Machining Co. (PAMCO) purchase order addressed to Western.  For the reasons stated above, the

10   Court finds that this document does not come within Item 5.  The Government also contends that this

11   document comes within Item 9, which authorizes the seizure of "[a]ll financial records for [Western]

12   including . . . costs of goods sold . . . ."  Specifically, the Government contends that this document

13   reflects Western's costs of goods sold.  (*See* Gov't's Supplemental Br.2.)  However, this document

14   reflects only PAMCO's costs, not Western's.  Accordingly, Defendants' motion is **GRANTED** as to

15   this document.

16        Defs.' Ex. 8 (WT-SW-BOX08-01093 to -01094): This document is a letter from Aerocraft to

17   Western indicating that Aerocraft "will no longer coordinate testing with outside laboratories."  The

18   Government contends that this document comes within Item 7 and suggests that the Court review it

19   in conjunction with Defendants' Exhibit 17.  (Gov't's Supplemental Br. 2.)  However, the Government

20   has made no showing that the agent who seized this document had the benefit of Exhibit 17's context.

21   Nothing on the face of Exhibit 8 identifies procedures Western used to cut test blocks or specimens.

22   Accordingly, Defendants' motion is **GRANTED** as to this document.

23        Defs.' Ex. 9 (WT-SW-BOX13-01102 to -01104): This document is a Barry Controls Quality

24   Control System Audit that Western filled out.  The Government contends that this document comes

25   within Item 7.  (Gov't's Supplemental Br. 2.)  However, nothing on the face of this document

26   identifies procedures Western used to cut test blocks or specimens.  Accordingly, Defendants' motion

27   is **GRANTED** as to this document.

28        Defs.' Ex. 10 (WT-SW-BOX13-01263); Defs. Ex. 11 (WT-SW-BOX13-01553): These

documents are Stratoflex Aerospace (Stratoflex) purchase orders addressed to Western.  The Government contends that these documents come within Item 9 because they reflect Western's costs of goods sold.  (Gov't's Supplemental Br. 2.)  However, these documents reflects only Stratoflex's costs, not Western's.  Accordingly, Defendants' motion is **GRANTED** as to these documents.

Defs.' Ex. 12 (WT-SW-BOX13-01958 to -01959): This Western order entry form indicates that Western was to supply Aeromax with titanium material cut from a larger block of titanium material.  Accordingly, this document comes within Item 14 because it regards Western's procedures related to cutting the thickness or short transverse of titanium material.  Defendants' motion is **DENIED** as to this document.

Defs.' Ex. 13 (WT-SW-BOX17-00894 to -00896): This document is a copy of Senior Aerospace's purchase order quality provisions.  Contrary to the Government's assertion, this document does not bear any relation to procedures Western used to cut test blocks or specimens.  Rather, it only identifies the procedures that a manufacturer must use to comply with Senior Aerospace's purchase order quality provisions.  Nor is this document a financial record within Item 9 simply because "this customer purchased large amounts of Ti 6-4 alloy from Western."  (Gov't's Supplemental Br. 3.)  Accordingly, Defendants' motion is **GRANTED** as to this document.

Defs.' Ex. 14 (WT-SW-BOX19-00231 to -00234, -00236 to -00239): These documents are correspondence between QPM Aerospace, Lindberg, and Western discussing the treatment of titanium material per specification Mil-H-81200B.  The Government seems to contend that these documents come within Item 1, which authorizes the seizure of "[a]ll records regarding tensile strength, yield strength, [and] microstructure . . . relating to titanium certified to Mil-T-9046, AMS-T-9046."  The Government takes the position that these records come within Item 1 because Mil-T-9046 incorporates Mil-H-81200.  (Gov't's Supplemental Br. 3.)  However, the Government has made no showing that an agent executing the search warrant would have known that Mil-T-9046 incorporates Mil-H-81200.  Nothing on the face of these documents otherwise identifies them as relating to titanium certified to Mil-T-9046.  Accordingly, Defendants' motion is **GRANTED** as to these documents.

Defs.' Ex. 15 (WT-SW-BOX19-00861 to -00862): This Western order entry form and accompanying Pro Craft Machining purchase order indicate that Western was to supply Pro Craft with

1   titanium material cut from larger blocks of titanium material.  Accordingly, these documents come

2   within Item 14 because they regard Western's procedures related to cutting the thickness or short

3   transverse of titanium material.  Defendants' motion is **DENIED** as to these documents.

4       Defs.' Ex. 16 (WT-SW-BOX19-00911, -00913 to -00915, -00917 to -00918, -00920): These

5   documents relate to a sale of titanium from Western to Parker Hannifin Corp.  The Government

6   contends that these documents come within Item 5.  (Gov't's Supplemental Br. 3.)  For the reasons

7   stated above, the Court disagrees.  Accordingly, Defendants' motion is **GRANTED** as to these

8   documents.

9       Defs.' Ex. 17 (WT-SW-BOX19-01379 ): This document is a Western quote for the sale of

10  titanium to Stratoflex.  The Government contends that this document comes within Item 5.  (Gov't's

11  Supplemental Br. 3.)  For the reasons stated above, the Court disagrees.  Accordingly, Defendants'

12  motion is **GRANTED** as to this document.

13      Defs.'Ex. 17 (WT-SW-BOX19-01380 to -01381): These documents are Western purchase

14  orders addressed to Metal Analysis and Aerocraft.  The documents contain the notations "sample" and

15  "w/test pc.," indicating that Western supplied pre-cut test pieces to Metal Analysis and Aerocraft for

16  testing and heat treating, respectively.  Accordingly, these documents come within Item 7 because

17  they identify procedures Western used to cut test blocks or specimens.  Defendants' motion is

18  **DENIED** as to these documents.

19      Defs.' Ex. 17 (WT-SW-BOX19-01382): This document is an Aerocraft delivery memo

20  addressed to Western.  The Government contends that this document comes within Item 5.  (Gov't's

21  Supplemental Br. 3.)  For the reasons stated above, the Court disagrees.  Accordingly, Defendants'

22  motion is **GRANTED** as to this document.

23      Defs.' Ex. 17 (WT-SW-BOX19-01383 to -01384, -01392 to -01393, -01397, -01403, -01383,

24  -01409, -01416 to -01418): These documents are Western certificates of analysis and conformance

25  for titanium material certified to specification AMS4965G.  The Government contends that these

26  documents come within Item 5.  (Gov't's Supplemental Br. 3.)  For the reasons stated above, the Court

27  disagrees.  Accordingly, Defendants' motion is **GRANTED** as to these documents.

28      Defs.' Ex. 17 (WT-SW-BOX19-013835, -01400): These documents are Stratoflex shipment

1   discrepancy records addressed to Western.  The Government contends that these documents come

2   within Item 5.  (Gov't's Supplemental Br. 3.)  For the reasons stated above, the Court disagrees.

3   Accordingly, Defendants' motion is **GRANTED** as to these documents.

4       Defs.' Ex. 17 (WT-SW-BOX19-01386, -01388, -01390, -01394, -01396, -01402, -01407,

5   -01410, -01412, -01414): These documents are Western invoices and a fax cover sheet addressed to

6   Stratoflex.  The Government contends that these documents come within Item 5.  (Gov't's

7   Supplemental Br. 3.)  For the reasons stated above, the Court disagrees.  Accordingly, Defendants'

8   motion is **GRANTED** as to these documents.

9       Defs.' Ex. 17 (WT-SW-BOX19-01398): This document contains the notation "+ (1) TEST

10  PC.," indicating that Western supplied pre-cut test pieces to Aerocraft for heat treating.  Accordingly,

11  this document comes within Item 7 because it identifies procedures Western used to cut test blocks

12  or specimens.  Defendants' motion is **DENIED** as to these documents.

13      Defs.' Ex. 17 (WT-SW-BOX19-01399, -01404, -01408): These Bodycote Materials Testing

14  (Bodycote) certifications indicate that Western supplied pre-cut test pieces of titanium material to

15  Bodycote for testing.  Accordingly, these documents come within Item 7 because they identify

16  procedures Western used to cut test blocks or specimens. Defendants' motion is **DENIED** as to these

17  documents.

18      Defs.' Ex. 17 (WT-SW-BOX19-01401, -1406): These documents are Stratoflex receiving

19  move tickets noting Western as the supplier.  The Government contends that these documents come

20  within Item 5.  (Gov't's Supplemental Br. 3.)  For the reasons stated above, the Court disagrees.

21  Accordingly, Defendants' motion is **GRANTED** as to these documents.

22      Defs.' Ex. 17 (WT-SW-BOX19-01419, -01421, -01423, -01425): These documents are

23  Stratoflex purchase orders addressed to Western.  The Government contends that these documents

24  come within Item 5.  (Gov't's Supplemental Br. 3.)  For the reasons stated above, the Court disagrees.

25  Accordingly, Defendants' motion is **GRANTED** as to these documents.

26      Defs.' Ex. 18 (WT-SW-BOX19-2689): This document is a handwritten note addressed to

27  "Brad."  The Government contends that this document comes within Item 14 because it regards

28  Western's procedures related to cutting the thickness or short transverse of titanium material.

However, although the document identifies a final material size, it does not identify an original material size.  Thus, nothing on the face of the document gives reason to believe that it necessarily regards Western's procedures related to cutting the thickness or short transverse of titanium material.

The Government also contends that this document comes within Item 5.  (Gov't's Supplemental Br. 4.)  For the reasons stated above, the Court disagrees.  Accordingly, Defendants' motion is **GRANTED** as to this document.

Defs.' Ex. 19 (WT-SW-BOX19-02691): This document is an Alloys Cleaning, Inc. packing list addressed to Western.  The Government contends that this document comes within Item 5. (Gov't's Supplemental Br. 4.)  For the reasons stated above, the Court disagrees.  Accordingly, Defendants' motion is **GRANTED** as to this document.

Defs.' Ex. 20 (WT-SW-BOX21-00265 to -00284): These are various documents relating to a Western sale of titanium material to Exactech, Inc.  Although the Government contends that these documents come within Item 14, there is no indication on the face of the documents that Western cut the titanium material that it sold to Exactech from larger blocks of titanium material.  Thus, these documents do not necessarily regard Western's procedures related to cutting the thickness or short transverse of titanium material.

The Government also contends that these documents come within Item 5.  (Gov't's Supplemental Br. 4.)  For the reasons stated above, the Court disagrees.  Accordingly, Defendants' motion is **GRANTED** as to these documents.

Defs.' Ex. 21 (WT-SW-BOX21-00310): This Western order entry form relates to a Western sale of titanium material to Exactech.  Although the Government contends that this document comes within Item 14, there is no indication on the face of the document that Western cut the titanium material that it sold to Exactech from lager blocks of titanium material.  Thus, this document does not necessarily regard Western's procedures related to cutting the thickness or short transverse of titanium material.

The Government also contends that this document comes within Item 5.  (Gov't's Supplemental Br. 4.)  For the reasons stated above, the Court disagrees.  Accordingly, Defendants' motion is **GRANTED** as to this document.

1        Defs.' Ex. 22 (WT-SW-BOX21-00313); Defs.' Ex. 23 (WT-SW-BOX21-0330); Defs.' Ex. 34

2    (WT-SW-BOX21-00305): These e-mails between Scott Voshall of Western and Victoria Sinquefeld

3    of Exactech contain the notation "Material will be sawcut . . . all dimensions."  Accordingly, these

4    documents come within Item 14 because they regard Western's procedures related to cutting the

5    thickness or short transverse of titanium material.    Defendants' motion is **DENIED** as to these

6    documents.

7        Defs.' Ex. 24 (WT-SW-BOX28-00583): This document reflects an e-mail conversation

8    between Linda Way and Mario Matos of Jet Products and Brian Misak of Western.  The substance of

9    the conversation authorizes Western to  supply Jet Products with titanium material cut from a larger

10   bar of titanium material.  Accordingly, this document comes within Item 14 because it regards

11   Western's procedures related to cutting the thickness or short transverse of titanium material.

12   Defendants' motion is **DENIED** as to this document.

13       Defs.' Ex. 25 (WT-SW-BOX28-00597): This document is a hand-drawn diagram labeled

14   "Western Titanium."  The diagram identifies how test blocks or specimens would be cut for two listed

15   purchase order numbers. Accordingly, this document comes within Item 7 because it identifies

16   procedures Western used to cut test blocks or specimens.  Defendants' motion is **DENIED** as to this

17   document.

18       Defs.' Ex. 26 (WT-SW-BOX32-00899); Defs.' Ex. 28 (WT-SW-BOX32-00908): These

19   documents contain the notation "+ (1) TEST PC," indicating that Western supplied pre-cut test pieces

20   of titanium material to Aerocraft for heat treating.  Accordingly, these documents come within Item

21   7 because they identify procedures Western used to cut test blocks or specimens.  Defendants' motion

22   is **DENIED** as to these documents.

23       Defs.' Ex. 27 (WT-SW-BOX32-00905): This document is a Stork Materials Technology

24   (Stork) test certificate addressed to Western.  Although the Government contends that this document

25   comes within Item 14, there is no indication on the face of the document that Western cut the titanium

26   material that Stork tested from lager blocks of titanium material.  Thus, this document does not

27   necessarily regard Western's procedures related to cutting the thickness or short transverse of titanium

28   material.

The Government also contends that this document comes within Item 5.   (Gov't's Supplemental Br. 4.)  For the reasons stated above, the Court disagrees.  Accordingly, Defendants' motion is **GRANTED** as to this document.

Defs.' Ex. 29 (WT-SW-BOX32-00909); Defs.' Ex. 30 (WT-SW-BOX32-00910): These documents indicate that that Western supplied pre-cut test pieces of titanium material to Aerocraft for heat treating.  Accordingly, these documents come within Item 7 because they identify procedures Western used to cut test blocks or specimens.  Defendants' motion is **DENIED** as to these documents.

Defs.' Ex. 31 (WT-SW-BOX32-00936 to -00937): This document is a hand-drawn diagram on Western letterhead.  The diagram identifies how test blocks or specimens would be cut from the corner of titanium material.  Accordingly, this document comes within Item 7 because it identifies procedures Western used to cut test blocks or specimens.  Defendants' motion is **DENIED** as to this document.

Defs.' Ex. 32 (WT-SW-BOX39-01310 to -01312): This document is a Conam-AMS certification of test for titanium material certified to specification 4975G.  The Government contends that this document comes within Item 7 because the document contains the notation "Minimum Test Sample."  (Gov't's Supplemental Br. 4.)  However, the document does not make clear whether Western or Conam-AMS cut the test sample.  Accordingly, nothing on the face of the document identifies procedures Western used to cut test blocks or specimens.  Defendants' motion is **GRANTED** as to this document.

Defs.' Ex. 33 (WT-SW-BOX39-01323): This document contains the notations "Test Pieces," "T/PC.," and "CORNER T/PC," indicating that Western supplied pre-cut pieces of titanium material to Staveley Services Materials Testing for testing.  Accordingly, this document comes within Item 7 because it identifies procedures Western used to cut test blocks or specimens.  Defendants' motion is **DENIED** as to this document.

Defs.' Ex. 35 (WT-SW-BOX39-01640 to -01642): These documents are Sierra Alloys Co. (Sierra) purchase orders and an accompanying fax cover sheet.  The documents contain the notations "CUT FROM SLAB O.K." and "O.K. to come from slab."  Accordingly, these documents come within Item 14 because they regard Western's procedures related to cutting the thickness or short

1    transverse of titanium material.  Defendants' motion is **DENIED** as to these documents.

2         <u>Defs.' Ex. 35 (WT-SW-BOX39-01637 to -01639, -01643):</u> These documents are Western

3    invoices and order entry forms related to a Western sale of titanium material to Sierra.   The

4    Government does not indicate why these documents come within the scope of the search warrant.  The

5    Government has contended that similar documents come within Item 5.   For the reasons stated above,

6    the Court disagrees.  Accordingly, Defendants' motion is **GRANTED** as to these documents.

7                                                  **CONCLUSION**

8         For the reasons stated, Defendants' motion to suppress evidence seized outside the scope of

9    the search warrant is **GRANTED IN PART AND DENIED IN PART**.

10        IT IS SO ORDERED.

11

12   DATED:  September 22, 2010

13                                              _____
                                               Honorable Janis L. Sammartino
14                                             United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28