UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>v.<br><br>WESTERN TITANIUM, INC. (1),<br>DANIEL SCHROEDER (2),<br><br>             Defendants. | Criminal No. 08-CR-4229-JLS<br><br>**FINAL ORDER RE: RESOLUTION OF DEFENDANTS WESTERN TITANIUM INC. AND SCHROEDERS' CLAIMS OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT** |

The Court has previously determined that certain documents seized from Defendant Western Titanium, Inc.'s business premises are protected by the attorney-client privilege or the work product doctrine (Doc. No. 518). Presently at issue is whether Defendants Western Titanium, Inc. and Daniel Schroeder ("Defendants") waived any privilege and/or whether the crime-fraud doctrine applies. Having considered the evidence and testimony presented at hearings held on July 27, 2010 and August 9, 2010, together with the submissions of the parties, the Court concludes that Defendants have not waived any privilege or protection. The Court further concludes that there is insufficient evidence to find that any document is subject to the crime-fraud exception.

**Background**

On October 20, 2004, the Defense Criminal Investigative Service issued an administrative

subpoena to Western Titanium, Inc. ("Western"). The subpoena required Western to produce all records regarding their sale of titanium to Merco Manufacturing. On July 25, 2007, the grand jury issued a subpoena to Western seeking the production of all documents relating to the testing of the material sold to Merco Manufacturing for the engine mounts at issue in this case. On August 8, 2007, the grand jury issued a second subpoena, which was subsequently withdrawn and re-issued on September 19, 2007. In August of 2007, the government agreed to a rolling production of the subpoenaed documents. By December 2007, Western had not produced any further documents and, on December 5, 2007, the Government withdrew its agreement for a rolling production and demanded production of all responsive documents by December 31, 2007. On December 21, 2007, Western provided its first batch of documents in its rolling production.

On April 15, 2008, law enforcement agents executed a search warrant at the Western business premises. During the execution of the warrant, a taint agent was assigned to review and segregate any potentially privileged documents discovered during the search. An attorney from the law firm representing Western, Jennifer Feldman, was present at the scene of the search and was given access to the building as the search was being conducted. Ms. Feldman advised the taint agent that certain sheets of paper contained within "a large mound of boxes" located in a particular room were privileged, as they were being used by the firm to identify documents to be produced pursuant to a subpoena. The documents identified by Ms. Feldman were not seized by the agents.

The potentially privileged documents gathered by the taint agent during the search were placed in a box and delivered to AUSA Fred Sheppard, the government taint attorney. Shortly thereafter, AUSA Sheppard conducted a review of these documents. Those documents determined to be privileged by AUSA Sheppard were returned to Defendants; those he determined not to be privileged were released to the prosecution team.

On April 23, 2008, AUSA Sheppard sent Western a letter enclosing documents he determined to privileged as a result of his review. The letter did not indicate whether AUSA Sheppard's review had been completed, or that documents he determined not to be privileged would be provided to the prosecution team. On April 30, 2008, defense counsel wrote to AUSA Sullivan, the lead prosecutor, and objected to the use of a taint team and requested the return of the remainder of the potentially privileged

documents.

The same day, Western also filed a motion under Federal Rule of Criminal Procedure 41(g) seeking the return of all property seized pursuant to the search warrant. Magistrate Judge Major denied the motion on June 18, 2008, declining to accept equitable jurisdiction. Western appealed Magistrate Judge Major's order and, in addition, filed a second Rule 41 motion specifically requesting the return of privileged documents. On September 2, 2008, Judge Whelan issued an order declining to accept equitable jurisdiction as to both motions. With respect to the privilege issue, Judge Whelan found no irreparable harm stemming from an alleged violation of the attorney-client privilege because the *in camera* supporting declaration provided by Western "merely offers one-sided descriptions of documents supposedly relating to communications between counsel and client." Gov't Supp. Brief (Doc. No. 544), Ex. 5, p. 8:11-12. However, Judge Whelan made no finding as to privilege and held that Western retained an adequate remedy at law by moving post-indictment to suppress any evidence wrongfully seized. *Id.* at 21. Judge Whelan noted "as for future claims of waiver, this Rule 41 motion appears on the docket and is evidence that Western moved to preserve its privilege objections 104 days after the seizure took place." *Id.* at 21-22. Defendants sought a writ of mandamus with respect to Judge Whelan's rulings which was denied by the Ninth Circuit Court of Appeals on January 23, 2009.

On December 4, 2008, the first indictment in this case was filed. On February 6, 2009, Defendants Western and Schroeder filed a Motion to Return Privileged Documents Seized, to Suspend Review of Documents Seized, to Obtain Evidentiary Hearing, and to Suppress Use of Same in this case. This motion was supported by a sealed *ex parte* privilege log and supporting declaration, which the Court subsequently determined was insufficient to identify the wrongfully seized property with sufficient particularity to allow the Court to engage in any meaningful analysis of Defendants' claims. At a hearing held on March 13, 2009, the Court required Defendants to submit a comprehensive privilege log, with notice to the Government, with respect to each document claimed to be wrongfully seized. In response, Defendants filed a revised privilege log under seal, with notice to the Government. On April 15, 2009, the Court issued an order denying without prejudice Defendants' motion for the return of the privileged documents because the privilege log failed to meet the requirements set forth at the hearing. Defendants were granted leave to resubmit their motion along with another revised

privilege log.  The Court indicated, however, that the *ex parte* filing of documents necessary to establish or contest a claim of privilege would be disfavored by the Court and would not be permitted absent a compelling showing of need.  Defendants appealed the order and, on September 15, 2009, the Court of Appeals dismissed the appeal (and denied a related mandamus petition) holding that the supplementation of the privilege log required by this Court comported with the legal requirements of a valid privilege log.

A hearing was held before this Court on September 17, 2009, at which time a new briefing schedule was set with respect to Defendants' privilege claims.  The next hearing took place on October 21, 2009.  By this time, the post-appeal briefing on the privilege issue was complete, but Defendants still had not provided a revised privilege log.  Western indicated a willingness to provide the Court with any testimony or other evidence required to make privilege determinations, but maintained that it should be permitted to present such evidence *ex parte* as the Government would otherwise stand to gain evidentiary advantages with respect to the documents.  The Court proposed conducting an evidentiary hearing at which the Government would be represented by the taint attorney who conducted the initial post-seizure document review.   The parties ultimately agreed to this proposal and hearings were held on January 20, February 1 and 2, February 26, and March 12, 2010, culminating in the Court's final conclusion that Defendants had established that all of the documents were privileged and/or protected.

## Discussion

The Government contends that Defendants have waived any privilege held over the documents by failing to timely assert privilege despite having several opportunities to do so.  For example, Defendants never filed a privilege log in response to the administrative or grand jury subpoenas; they did not assert any privilege during the execution of the search warrant; and, after the search, did not identify any specific document still in the possession of the Government as being privileged.  The Government also points to Defendants' failure to assert privilege in their Rule 41 motions.  The first Rule 41 motion attacked the search warrant and its execution.  The second Rule 41 motion specifically sought the return of privileged documents, but, in the Government's view, was supported by inadequate ex parte claims of privilege.  The third Rule 41 motion, that filed in the instant case, was denied by this Court for Defendants' failure to file an adequate privilege log.

Defendants counter that they took reasonable steps to guard their privilege and that the Government's attempt to expand the waiver doctrine to circumstances such as these, where the holder has involuntarily lost possession, is unprecedented. Defendants maintain that they never refused to provide a privilege log; rather, they objected to providing a privilege log to the prosecutor and repeatedly asked to be permitted to handle the privilege issues with the taint attorney.

The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. *Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 340 (9th Cir. 1996). "Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Id.* at 340-41. For this reason, the focal point of the Court's privilege analysis must be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, rather than the holder's intent to waive the privilege. *Id.* at 341.

In this case, it is undisputed that Defendants did not voluntarily or inadvertently disclose the documents at issue. Therefore, the Court is left to determine whether fundamental fairness requires a finding that Defendants' conduct constitutes a disclosure of their privileged communications to the Government. The attorney-client privilege may be waived by implication, even when the disclosure of the privileged material is involuntary. *United States v. de la Jara*, 973 F.2d 746, 749-50 (9th Cir. 1992). When disclosure is involuntary, the attorney-client privilege will be preserved if the privileged holder has made efforts "reasonably designed" to protect and preserve the privilege. *Id.* at 750. Conversely, the privilege will be deemed waived if the privilege holder "fails to pursue all reasonable means of preserving the confidentiality of the privileged matter." *Id.*

Despite the rocky path leading to the Court's privilege determination, the Court cannot conclude that Defendants have failed to pursue all reasonable means of preserving the confidentiality of the privileged materials. To the contrary, Defendants have vigorously objected to the prosecution team's possession of the privileged documents since their seizure and throughout these proceedings.

Defendants first had reason to be aware that the box of potentially privileged material had been reviewed by members of the U.S. Attorney's Office on April 23, 2008, when the taint attorney, AUSA

Sheppard, sent a letter returning some of the documents he deemed to be privileged.  On April 30, 2008, defense counsel wrote to the lead prosecutor, AUSA Sullivan, and objected to the unilateral determination of privilege and demanded the return of the potentially privileged documents.  In addition, the same day, Western filed its first Rule 41 motion.

Defendants became aware that privileged documents had been turned over to the prosecution team on May 19, 2008, when the Government used one of the privileged documents in its response to Western's Rule 41 motion.  On May 22, Western sought and obtained an agreement from the Government to suspend its review of the potentially privileged documents to provide Western an opportunity  raise the issue in court.[1]  On May 30, at a hearing on Western's first Rule 41 motion, the Government agreed to provide Western with access to the potentially privileged documents and Magistrate Judge Major directed the parties to meet and confer about the privilege issues.

Western was provided copies of the potentially privilged documents and, throughout the month of June, there appears to have been attempts by both sides to resolve the privilege issues.  The process was stymied, however, due to the fundamental disagreement that has permeated these proceedings – the degree to which the prosecution team should be involved in the privilege determination.  The prosecution team demanded identification of specific documents claimed to be privileged, while Western continued to object to the taint process and maintained that disclosures toward resolution should be made, if at all, with the taint attorney.  Western then, on July 28, 2008, filed its second Rule 41 motion, which was supported by an *in camera* privilege log and declaration identifying specific documents.[2]  (S.D.Ca. Case No. 08-CV-794-W, Doc. No. 38.)

Thus, during the three months following the seizure of the potentially privileged documents, Western immediately sought the return of the documents, objected to the taint review process, objected to the disclosure of the documents to the prosecution team, filed a general Rule 41 motion, and upon being provided with copies of the documents, filed a second Rule 41 motion specifically asserting

---

[1] The Government's May 28, 2008 letter regarding this agreement provided that if a motion was not filed in fourteen days, the Government would continue to review the documents.

[2] The privilege log was similar to, if not the same as, that submitted in support of Defendants' third Rule 41 motion, which this Court found failed to adequately set forth information necessary to make a privilege determination.

privilege over the potentially privileged documents. After the indictment was filed in this case, Defendants filed their third Rule 41 motion and have been vigorously pursuing their privilege claims since.

The Government contends that Defendants have, on several occasions, failed to properly assert privilege by failing to assert specific claims of privilege and/or by failing to provide a sufficient privilege log. However, the Court is not persuaded that the authority cited by the Government supports a finding of waiver on the basis of inadequate claims to the prosecution when other means to protect the privilege, such as court intervention, have been undertaken. In *United States v. de la Jara*, *supra*, the court held that a defendant waived the attorney-client privilege over a letter introduced by the prosecution at trial because he "did nothing to recover the letter or protect its confidentiality during the six month interlude between its seizure and introduction into evidence." 973 F.2d at 750. In the second case cited by the Government, *United States v. SDI Future Health, Inc.*, 464 F.Supp.2d 1027, 1046, the court found that the defendant waived its attorney-client privilege over certain documents "by failing to assert it or to take timely action to protect it."

While these authorities clearly establish that the failure to take any action to protect the confidentiality of documents seized by the Government may result in waiver, they are not particularly helpful in the context of this case, where Defendants clearly *did* take action to preserve their privilege. By filing their third Rule 41 motion, Defendants timely placed their objections to the seizure of the documents and the taint review process before the Court, and thus, in the Court's view, acted reasonably to protect and preserve their privilege. Although this Court has at times ruled the contents of the privilege logs to be inadequate, Defendants ultimately came forward with sufficient evidence to persuade the Court that the disputed documents are privileged or protected.

Furthermore, the Court notes that most of the issues encountered with respect to the sufficiency of the privilege logs stemmed from Defendants' objection to providing the prosecution team with the information necessary to establish privilege. Although the Government disputes this claim, the record does contain some evidence that Defendants were willing to litigate the privilege claims with a taint

attorney, even before the Court suggested it.[3] On the other hand, as the Government points out, the record also contains evidence of Defendants' position that the determination of privilege should be handled *ex parte*, without any government attorney.[4] In any event, there is no doubt that Defendants have consistently challenged their obligation to disclose information regarding privilege to the prosecution team and that the Court consistently took the view that the Government should participate in the evidentiary process. As the Court never definitively resolved this issue and opted instead to litigate the privilege issues with the taint attorney, the Court does not believe that Defendants' failure to file and provide the prosecution with an adequate privilege log can fairly be deemed a waiver.

Nor is the Court persuaded that Western's failure to file a privilege log in response to the administrative and grand jury subpoenas should result in a finding a waiver. Evidence presented during the privilege hearings conducted with the taint attorney established that none of the privileged documents or work product compilations had been created at the time of the administrative subpoena in 2004. Similarly evidence presented during these hearings established that very few of the privileged or protected documents would have been created or compiled at the time of the July 2007 grand jury subpoena, or even the August and September subpoenas . Furthermore, with respect to the grand jury subpoenas, the agents executing the search warrant confirmed that Defendants were still responding to the subpoenas at the time of the search. Even though the Government demanded compliance with the subpoenas by December 31, 2007, the fact that Defendants were still actually producing documents in April 2008 when the search warrant was executed weighs against a finding that Defendants waived their privilege by not producing a privilege log. Because the production process was still underway, Defendants would not necessarily have been in a position to discover every privileged corporate document responsive to the subpoenas. Finally, the Court is not persuaded that the privileged documents would have been responsive to the subpoenas' request for Western business records. Defendants have established that the privileged/protected documents were created and compiled in connection with litigation and that they were kept separate and apart from the company's business

---

[3] Defendants' Post-Hearing Brief, Doc. No. 546, Ex. F.

[4] Doc. No. 243 at 3:5-16; Doc. No. 251 at 11:21-25.

1 | records.

## Conclusion

Having considered the totality of circumstances in this case, the Court concludes that Defendants have made sufficient efforts reasonably designed to protect and preserve their privilege with respect to the seized documents. Accordingly, the Court finds that Defendants have not waived their attorney-client privilege or work product protection. Further, as the Court indicated during the hearing on August 9, 2010, the Court finds that the Government has failed to establish, from evidence independent of the privileged documents, that any of the privileged communications were in furtherance of an intended or present illegality. Accordingly, the crime-fraud doctrine does not apply. Therefore, the privileged and/or protected documents may not be admitted as evidence at trial and shall be returned to Defendants within one week of this Order.

IT IS SO ORDERED.

DATED: September 27, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge